SOPHIE BROOKS, PROSECUTOR, v. ESSEX WAREHOUSE
COMPANY, DEFENDANT.

Argued October 8, 1947—Decided November 7, 1947.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutor, *Avidan & Avidan* (*Sara M. Lewitt* and *Alexander Avidan*).

For the defendant, *Kalisch & Kalisch* (*Isidor Kalisch*).

The opinion of the court was delivered by

BODINE, J. This is a workmen's compensation case. The widow had judgment in the Bureau which was reversed in the Court of Common Pleas. The case comes before us for review on *certiorari,* and it becomes our duty to find the facts.

The deceased had been employed as a laborer for twelve years by the defendant. On December 4th, 1944, he had been working all day and was last seen by James Mullin, a fellow employee, on the first floor of the warehouse at approximately eight o'clock in the evening. His body was found in the pit of the rear elevator shaft on the following morning. He was still wearing his working clothes. His face was in several inches of water. The cause of death, certified by the coroner, was fractured skull and drowning. The elevator shaft was on the east side of the building. To the rear of this was the men's wash room to which many of the employees went before leaving the building. The practice was to leave only a very dim light after closing. Such was the case when the decedent was last seen. The elevator was of the usual warehouse type, without self-closing doors or safety devices of any kind. The

distance from the first floor to the pit, where the deceased was found, was between twelve and fifteen feet.

The learned and experienced Deputy Commissioner of Compensation found: "I have determined that when the decedent was in the area of the elevator shaft he was in the course of his employment.

"I have further determined that the presence of the body bearing injuries which would result from a fall down the elevator shaft raises a legitimate inference that petitioner's decedent died as a result of a fall down the elevator shaft.

"I have further determined that, there being no evidence as to how he met his death, the circumstances were such that it is proper that I presume that decedent's death was the result of an accident arising out of and in the course of his employment."

This determination was in accord with the finding in *Mountain Ice Co.* v. *Durkin*, 6 *N. J. Mis. R.* 1111, 1113. In that case, it was said by the Supreme Court: "The presence of the body, bearing injuries which would result from a fall immediately beneath the platform thirty-five feet above, from which an open door led to a room to which he had access, raises a legitimate *inference that he* died as the result of a *fall from the platform*. The deceased was a watchman; the very character of his employment would require him to enter any portion of the company's premises, where his presence might be of benefit to his employer's interest." The Durkin case was affirmed by a unanimous court, 105 *N. J. L.* 636.

The Court of Common Pleas found that it was possible that death did not occur by reason of an accident. The court found the evidence in equipoise as to whether the elevator was or was not at the main floor at the time decedent was last seen on that floor preparatory to leaving. He was not satisfied that the petitioner had established as a reasonable probability and not possibility the fact decedent died as the result of an accident which arose out of and in the course of his employment.

The night watchman specifically places the elevator stopped at the main floor at 7:32 P. M., but there were many of the employees who could operate it and on occasion did. One

witness testfied "the doors of the elevator are left open but at night it is always dark back where the elevator shaft was." Obviously, if the elevator was removed from the main floor and the door was left open, as it usually was, the accident could have happened precisely as found in the Bureau.

The proofs that the elevator was not moved are not at all satisfactory. There is no way to account for the death save by accident. There were at the argument veiled suggestions of death by violence, but no proof whatever exists in the record to sustain such a suggestion. If the elevator had been moved after the watchman had left it, the accident could have happened and, as noted, most of the employees knew how to move it. Proof that the elevator door was closed when the police came in the morning signifies nothing.

After a very careful examination of the record, we are constrained to find the facts precisely as they were found in the Bureau.

The judgment of the Court of Common Pleas is therefore reversed, and the findings of the Bureau are affirmed, with costs.